IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **SHAWNATHAN DELREA FORT,** | CASE NO. 3:23 CV 136 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **DARLENE WEIRICH,** | |
| Defendant. | MEMORANDUM OPINION AND ORDER |

### INTRODUCTION

*Pro se* Plaintiff Shawnathan Delrea Fort filed this civil rights action against Defendant Toledo Correctional Institution Case Manager Darlene Weirich. (Doc. 1). He brings a First Amendment claim regarding denial of a book and seeks injunctive and monetary relief. *See id.* Currently pending before the Court is Defendant's Motion to Dismiss / Motion for Judgment on the Pleadings (Doc. 8). Plaintiff has not responded to the motion, and the time in which to do so has expired. *See* Northern District of Ohio Local Rule 7.1(d) (providing 30 days to respond to a case-dispositive motion). Jurisdiction is proper under 28 U.S.C. § 1331.

For the reasons discussed below, the Court DENIES Defendant's Motion to Dismiss.

### BACKGROUND

Plaintiff, who is housed in Extended Restrictive Housing ("ERH") at the Toledo Correctional Institution ("TCI"), asserts that prior to his transfer to TCI, he ordered an educational book from an approved vender at a different Ohio Department of Rehabilitation and Correction ("ODRC") institution. (Doc. 1, at 3). He asserts he "begged" Defendant, a Case Manager, to approve the book, but that she "is being advi[s]ed by her colleagues in ODRC to not

approve" the book. *Id*. at 4. He asserts Defendant is "allowed to declare such approval per [an] inmate['s] individual educational needs" and that such approval has been given for similar books from the same vendor to other inmates with Plaintiff's same disciplinary status. *Id.* at 3-4. Plaintiff further asserts he asked the mail room to hold the book "per Case Manager Weirich approval", and the request was denied. *Id.* at 2.

Plaintiff cites two ODRC policies, which he asserts state as follows:

1. ODRC 61-PRR-01 Personal Property – Incarcerated Persons: "Most incarcerated individuals are eligible to order and receive packages from vendors . . . with said exceptions except for ERH incarcerated individuals as outlined in ODRC Policy 55-SPC-02, Restrictive Housing Procedures."

2. ODRC 55-SPC-02 Restrictive Housing Procedures: "With the approval of the Managing Officer, the units that house RH and ERH individuals at any prison may have operational and privilege variations that exceed the minimum standards outlined in these policies to meet an operational need or goal."

*Id.* at 4.

Plaintiff seeks a preliminary injunction stating that the book he seeks (<u>Mixing and Mastering Music: An Idiot's Guide</u>) can be provided to him as a mail-ordered product while in ERH "until further reading material can be ordered" from the vendor, as well as compensatory, nominal, and punitive damages in a total amount of $53,030. *Id.* at 5.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a dismissal for failure to state a claim, a complaint must present enough facts "to state a claim to relief that is plausible on its face" when its factual allegations are presumed true and all reasonable inferences are drawn in the non-moving party's favor. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir.

2

2008). *Pro se* pleadings generally are liberally construed and held to less stringent standards than pleadings drafted by lawyers. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

## DISCUSSION

Defendant presents two bases for dismissal. First, she contends Plaintiff does not allege any personal involvement by Defendant that violated his rights. Second, she asserts Plaintiff has failed to plead sufficient facts to sustain a cause of action.[1] For the reasons discussed below, the Court denies Defendant's motion.

<u>Personal Involvement</u>

Defendant first contends the Complaint must be dismissed because Plaintiff does not allege facts to support Defendant's "personal involvement" in the alleged violation. (Doc. 8, at 3).

In order to plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight,* 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted); *see also Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) ("To establish a § 1983 . . . claim against a public official in his personal capacity, a plaintiff must show that the official either actively participated in the alleged unconstitutional conduct or implicitly authorized, approved or

---

1. Additionally, Defendant argues that any attempt to sue her in her individual capacity for state law claims is barred by Ohio Revised Code § 9.86. Although it does not appear to the Court that Plaintiff asserted any state law claims or intended to sue Defendant in her individual capacity, Defendant is correct that if Plaintiff did intend to do so, such claims are barred. *See McCormick v. Miami Univ.*, 693 F.3d 654, 665 (6th Cir. 2012).

knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate." (internal quotation and citation omitted)); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Defendant contends Plaintiff "cites no personal involvement of the Defendant, only allegations that he was not allowed to receive a book while on ERH status." (Doc. 8, at 3). The Complaint asserts Plaintiff "begged" Defendant to allow the book, that "she's allowed to declare such an approval", and that she "is being advi[s]ed by her colleagues . . . not to approve" the book. (Doc. 1, at 3-4). Viewing the Complaint in the light most favorable to Plaintiff as is required at this juncture, the Court finds Plaintiff has sufficiently alleged Defendant's personal involvement in the alleged violation.

First Amendment Claim

Next, Defendant asserts Plaintiff has failed to plead sufficient facts to support a First Amendment cause of action.

The First Amendment protects "the right to receive information and ideas," which, as applicable in the prison context, extends to the right to receive mail and to access reading material. *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972); *see also Parrish v. Johnson*, 800 F.2d 600, 603 (6th Cir. 1986) (noting that "prisoners have some First Amendment rights in receiving mail"); *Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989) (describing publishers' "legitimate First Amendment interest in access to prisoners" in the context of analyzing a prisoner's right to receive publications); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) ("A prisoner's right to receive mail is protected by the First Amendment.").

4

"[B]ut prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003); *Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). As the Sixth Circuit has explained:

> Several principles "necessarily frame our analysis of prisoners' constitutional claims." *Turner v. Safley*, 482 U.S. 78, 84 . . .(1987). First, "federal courts must take cognizance of the valid constitutional claims of prison inmates," since "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Id*.; *see Procunier v. Martinez*, 416 U.S. 396, 405 . . .(1974). Consequently, "[w]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Martinez*, 416 U.S. at 405–406[.] Still, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 . . . (2001).
>
> Second, given the "complex and intractable" problems of prison administration, we recognize that federal courts are "ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Martinez*, 416 U.S. at 405, . . .; *see Thompson v. Campbell*, 81 F. App'x 563, 566 (6th Cir. 2003). For this reason, we generally "defer[ ] to the judgments of prison officials in upholding [prison] regulations against constitutional challenge" so long as the regulations are "reasonably related to legitimate penological interests." *Shaw*, 532 U.S. at 229 . . . (quoting *Turner*, 482 U.S. at 89[]).

*Hanrahan v. Mohr*, 905 F.3d 947, 954 (6th Cir. 2018).

The Court considers four factors – known as the *Turner* factors – to determine whether a prison's infringement on constitutional rights are "reasonably related to legitimate penological interests." First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. *Turner*, 482 U.S. at 89 (internal quotation marks and citation omitted). If this first factor is not met, "the regulation is unconstitutional, and the other factors do not matter." *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994) (citing *Turner*, 482 U.S. at 89-90). If, however, the first factor is met, a Court

5

must then balance the three remaining considerations: (1) whether alternative means of exercising the right remain open to prison inmates; (2) the impact accommodation of the right would have on guards, other inmates, and on prison resources; and (3) "the absence of ready alternatives." *Turner*, 482 U.S. at 89–90.

Defendant asserts that limitations on ERH inmates "not being eligible to order packages unquestionably[] are reasonably related to legitimate penological interests." (Doc. 8, at 5). It further asserts "the prison articulated to Plaintiff a legitimate penological interest in not permitting ERH status inmates to receive packages" and that Plaintiff acknowledged that rule and "requested the mailroom to hold the book for him until he was given approval." (Doc. 8, at 5). Defendant further asserts that she "is not the Managing Officer that can approve special privileges, as referred to in ODRC Policy 55-SPC-02." *Id.*

Defendant is correct in citing many restrictions that have been upheld as reasonably related to legitimate penological interests and the deference prison officials are due in making those determinations. *See* Doc. 8, at 5. However, this caselaw is largely based on cases at the summary judgment rather than motion to dismiss stage, and addresses different situations than those presented here – media interviews, providing legal assistance to other prisoners, ban on certain publications, inmate-to-inmate correspondence, prison labor unions. *See id.* And "evaluating whether there is a legitimate penological interest that permits a restriction on the constitutional rights of incarcerated individuals . . . is not normally an exercise that can be undertaken in the context of a motion to dismiss brought under Rule 12(b)(6)." *Mayberry v. Humphreys Cnty.*, 2012 WL 4506027, at *9 (M.D. Tenn.), *report and recommendation adopted*, 2012 WL 4490809. Moreover, although Defendant argues that ODRC's limitations on the rights of inmates in ERH to order packages are "unquestionably . . . reasonably related to legitimate

6

penological interests" – and the Court can imagine what those legitimate penological interests may be – it would be inappropriate for the Court to do so at this stage in the proceedings.[2]

While Defendant may ultimately raise (and succeed on) the argument that its restrictions do not violate the First Amendment at the summary judgment stage of this proceeding, the Court finds it would be premature to make that determination at the dismissal stage.

## Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion to Dismiss (Doc. 8) be, and the same hereby is, DENIED.

    s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

---

2. Further, although Defendant asserts she is not "the Managing Officer that can approve special privileges, as referred to in ODRC Policy 55-SPC-0" (Doc. 8, at 5), the Complaint – which this Court must take as true at this stage in the proceedings – expressly asserts Defendant "allowed to declare such an approval". (Doc. 1, at 4).